UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 14-14717-RWZ


DANIEL CAMEY and RAYMOND ALVANDI,
*individually and on behalf of all others similarly situated*

v.

FORCE FACTOR, LLC, *et al.*


MEMORANDUM OF DECISION

May 16, 2016


ZOBEL, J.

Daniel Camey and Raymond Alvandi purchased a nutritional supplement believing that it would make them statuesque and virile. Their complaint alleges a scheme among the several defendants to push that supplement, Test X180,[1] onto men around the country through an advertising campaign that they characterize as duplicitous, fraudulent, and entirely unmoored from nutritional science. Plaintiffs allege that this campaign violates a host of federal and state consumer protection laws, and defendants have moved to strike (Docket # 39) and to dismiss (Docket ## 34, 36) those allegations. The motions are allowed.

I.  **Background**

The complaint, read most favorably to plaintiffs, see Garret v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002), describes defendants' scheme as follows.

---

[1]  Defendants manufacture three Test X180 products: Test X180, Test X180 Alpha, and Test X180 Ignite. The distinctions between each are immaterial for present purposes, and the court refers to them collectively as Test X180.

1

Test X180, a nutritional supplement that purportedly increases a user's free testosterone level, comprises a blend of extracts. Its chief ingredient is Testofen, a patented fenugreek extract with a proprietary mixture of phytochemical constituents. Defendant Gencor[2] manufactures Testofen and conducted the research underlying it. Defendant Force Factor, LLC incorporates Testofen into Test X180, which it sells nationwide in defendant GNC's[3] stores, among other outlets. Advertising for Test X180 focuses on Testofen and its purported benefits, and stresses the soundness of the science behind it, with numerous references to clinical research, proven methods, and "Harvard grads." Among the purported benefits of Testofen: it is "a boost" that "delivers mind-blowing results" to "maximize muscle mass," "boost sex drive & libido," and those who take it will "become 100% man."

Plaintiffs Camey and Alvandi, both California residents, purchased Test X180 supplements in California. Camey went to a GNC store in Chino and spent roughly sixty to seventy dollars; Alvandi, who went to a GNC store in Los Angeles, spent roughly eighty. Camey and Alvandi bought the supplements in hopes that its use as directed would both boost their testosterone and bring along the assorted concomitant benefits. This, they allege, did not happen, and they filed this putative class action.[4]

---

[2]   "Gencor" refers collectively to defendants Gencor Nutrients, Inc., Gencor Pacific, Inc., and GE Nutrients.

[3]   "GNC" refers collectively to General Nutrition Corporation, General Nutrition Centers, Inc., GNC Corporation, and S&G Properties, LLC.

[4]   This is not the only class action concerning Testofen. At the outset of this litigation, plaintiffs in a near-identical case in the Central District of California, Ryan v. Gencor Nutrients, No. 15-cv-1209 (C.D. Cal.), moved the Judicial Panel on Multidistrict Litigation to consolidate their case with this one. The Panel denied this request in April 2015 (Docket # 4). Ryan has been stayed pending appeal to the Ninth Circuit of another substantially similar case before the Central District of California, Bitton v. Gencor Nutrients, No. 14-cv-3754 (C.D. Cal.), appeal pending sub nom. Bitton v. Gencor Nutrients, No. 14-56381 (9th Cir.).

Plaintiffs' first amended complaint ("FAC") (Docket # 27), at issue here, contains nine counts against the several defendants. On behalf of a nationwide class, plaintiffs allege violation of: the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq., Count I; the Massachusetts Consumer Protection Act, Mass. Gen. Laws. ch. 93A, Count II; and the unjust enrichment laws of the fifty states and the District of Columbia, Count IX. Force Factor and GNC have moved to strike the class allegations in each of these counts on the theory that no court could certify a nationwide class to pursue them. On behalf of a California class, plaintiffs have alleged violations of the following California laws: express warranty, Cal Com. Code § 2313, Count III; the implied warranty of merchantability, id. § 2314, Count IV; the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., Count V; the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., Count VI; the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., Count VII; the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq., Count VIII; and unjust enrichment at Count IX. Defendants have moved to dismiss each, primarily arguing that California law prohibits private plaintiffs from bringing consumer protection claims predicated on a failure to substantiate science undergirding advertising campaigns.

## II.  Motion to Strike

The Federal Rules of Civil Procedure allow courts to strike "redundant, immaterial, [or] impertinent" matter from any pleading. Fed. R. Civ. P. 12(f). To prevail on a motion to strike, a party must show that, even with all reasonable inferences made in the plaintiff's favor, the matter to be stricken is clearly legally insufficient. See In re Gabapentin Patent Litig., 648 F. Supp. 2d 641, 647 (D.N.J. 2009); see also United States v. Belanger, 799 F. Supp. 2d 98, 101 (D. Me. 2011).

A.  **Maturity of Motion to Strike**

Courts must approach motions to strike class allegations with caution given the paucity of the factual record at the outset of litigation. See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013). This caution, however, should not deter a court from "delet[ing] the complaint's class allegations" when "it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." Id.

Deferring the issues raised in defendants' motion to strike is inapposite here for two reasons. First, these issues are not fact-intensive. Defendants have moved to strike three nationwide class allegations based on complications rooted in Massachusetts' choice-of-law rules. This presents complex legal questions, but the facts required to answer them are simple and few: the court must know the residence, place of business, and state of incorporation of the parties, and the state(s) in which plaintiffs purchased Test X180. All this information is all in the complaint. The named plaintiffs reside in California, putative class members reside in every state, the defendants have headquarters in Massachusetts, Pennsylvania, California—and are incorporated either in Delaware or Pennsylvania—and the putative class members purchased Test X180 in every state. From these facts, the court can address the several issues posed by the defendants' motion to strike: first, whether Massachusetts law can apply to a nationwide class; second, whether common questions of law would predominate for a nationwide MMWA class; and third, whether common questions of law would predominate for a nationwide unjust enrichment class. The parties have ably briefed each of these questions, and a more robust factual record is simply not needed to answer them. Second, numerous courts have evaluated the types of classes proposed by plaintiffs

and have rejected them nearly unanimously. Given sufficient facts and well developed law, there is no reason to postpone decision on these issues.

### B. Count II (Massachusetts Consumer Protection Act)

On behalf of the nationwide class, plaintiffs claim that defendant Force Factor violated Section 9 of the Massachusetts Consumer Protection Act, which authorizes suits from consumers injured by unfair or deceptive commercial practices. Mass. Gen. Laws ch. 93A § 9(1). Moving to strike the class allegations, defendants have argued that Massachusetts' choice-of-law rules—which govern, given the seat of this court—preclude the application of Massachusetts's consumer protection law to a nationwide class. Defendants are correct.

Although Section 9 of the Massachusetts Consumer Protection Act has no textual constraints on its application, Massachusetts choice-of-law principles are not so unlimited. Massachusetts follows the Restatement (Second) of Conflict of Laws to determine choice-of-law issues. Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 670 (Mass. 1985). A plaintiff alleging misrepresentations invokes Section 148 of the Restatement, see In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 82 (D. Mass. 2005), which focuses on where a plaintiff relied on a defendant's alleged misrepresentation to determine which state's law will apply, Restatement (Second) of Conflict of Laws § 148 (1971); see also id. at cmt. g ("[T]he place where a plaintiff acted in reliance on defendant's representations is more important than the place where the defendant made or the plaintiff received the representations.").[5] These

---

[5] Section 148, titled "Fraud and Misrepresentation," reads, in relevant part:

principles have generated an unbroken string of opinions in which the federal courts have refused to allow multi-state classes to pursue claims under the Massachusetts Consumer Protection Act. See, e.g., S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 93 (D. Mass. 2007).

This court declines to buck the trend. The only plaintiff-specific allegations in the complaint concern buying Test X180 in California, and the only plausible reading of the complaint's class allegations is that the putative nationwide class members purchased Test X180 in their home states. Those states, not Massachusetts, are the sites of plaintiffs' respective reliance on defendants' alleged misrepresentations, and this forecloses the application of Massachusetts law to claims arising from them. Plaintiffs therefore may not properly assert a claim, either on their own behalf or a nationwide class's, under the Massachusetts Consumer Protection Act, and the class allegation in Count II is stricken from their complaint. By the same logic, the motion to dismiss Count II, as asserted by plaintiffs individually, is allowed.

### C. Count I (MMWA) and Count IX (Unjust Enrichment)

---

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
   (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
   (b) the place where the plaintiff received the representations,
   (c) the place where the defendant made the representations,
   (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
   (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
   (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Id. § 148.

Also on behalf of a nationwide class, plaintiffs have asserted violations of the MMWA and of each state's unjust enrichment laws. Because the MMWA count relies upon state law and the unjust enrichment count implicates it directly, the motion to strike poses three distinct questions, the first and third of which are very closely related. First, do the warranty and unjust enrichment laws of the states conflict sufficiently with the law of Massachusetts to warrant a choice-of-law analysis? See Reicher v. Berkshire Life Ins. Co. of Am., 630 F.3d 1, 4 (1st Cir. 2004). Second, do Massachusetts choice-of-law principles counsel application of the states' warranty and unjust enrichment law to the claims of the nationwide class? See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). And third, do the differences between state warranty and unjust enrichment laws preclude common questions from predominating for the nationwide class? See Fed. R. Civ. P. 23(b)(3); see also In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015 (7th Cir. 2002).

### 1.     Conflicts Between State Laws

Conflicts between state laws may arise in several ways. State laws conflict when one state provides plaintiffs with a private right of action and another leaves them with an administrative remedy. See Reicher, 360 F.3d at 4–5. State laws may also conflict by providing for different remedies. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 817–18 (1985). Finally, the law of two states conflicts when the same cause of action in each contains different elements. See O'Connell v. Fed. Ins. Co., 484 F. Supp. 2d 223, 225 n.3 (D. Mass. 2007). The warranty and unjust enrichment laws of the states vary significantly in several respects, and these conflicts necessitate a choice-of-law analysis.

#### i.     MMWA and State Warranty Laws

Although the MMWA is a federal statute, "state warranty law lies at the base of <u>all</u> warranty claims under [it]." Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ginsburg, Ruth Bader, J.) (emphasis added), accord Brown v. Electrolux Home Products, Inc., — F.3d —, No. 15-11455, 2016 WL 1085517 at *1 (11th Cir. Mar. 21, 2016) ("The claims under the Magnuson-Moss Act are identical to the other warranty claims because they are also based on state law."); Oscar v. BMW of N. Am., LLC, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) ("The MMWA does not create additional bases for recovery, but rather federalizes existing state law causes of action.").

Plaintiffs' MMWA claims rely on breaches of both express and implied warranties, and the law concerning each varies sufficiently to conflict from state to state. Cf. id. (collecting cases refusing to certify nationwide MMWA classes based on variations in state law). As to the law of express warranty, the states clash in a number of ways—for instance, states require different levels of knowledge and reliance from plaintiffs, and this alone suffices to create a conflict. Several states require that a plaintiff show actual knowledge and reliance. E.g., Williams v. Beechnut Nutrition Corp., 229 Cal. Rptr. 605, 608 (Cal. Ct. App. 1986); Stamm v. Wilder Travel Trailers, 358 N.E.2d 382, 385 (Ill. App. Ct. 1976). Other do not require plaintiffs to show reliance. E.g., Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 644–45 (10th Cir. 1991) (applying Colorado law). The states also conflict as to the law of implied warranty. To take just one example—likewise sufficient to create a conflict—many states require contractual privity to sustain such a claim, whereas some do not. Compare Curl v. Volkswagen of Am., Inc., 871 N.E.2d 1141, 1147 (Ohio 2007) (requiring privity) with Hyundai Motor Am. v. Goodin, 822 N.E.2d 947, 959 (Ind. 2005) (not requiring privity).

## ii.     Unjust Enrichment

"[C]ountless courts have found [that] the states' different approaches to, or elements of, unjust enrichment are significant." Rapp v. Green Tree Servicing, LLC, 302 F.R.D. 505, 513 (D. Minn. 2014) (quotation omitted) (collecting cases).  A smaller set of cases takes the opposite position: that unjust enrichment laws vary only trivially from state to state, and do not conflict. See, e.g., In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 58 (D.N.J. 2009). The latter set of cases, however, engage only superficially with the state-to-state variations in unjust enrichment law: the Mercedez-Benz court quotes its analysis from Powers v. Lycoming Engines, 245 F.R.D. 226 (E.D. Pa. 2007). The Third Circuit, however, had reversed that decision three weeks earlier, noting that the district court's "choice-of-law examination . . . had its shortcomings," and that among these shortcomings was its too-cursory examination of unjust enrichment laws. Powers v. Lycoming Engines, 328 Fed. App'x 121, 125, 126 (3d Cir. 2009).

Following the majority view, this court is persuaded that the unjust enrichment laws of the states differ sufficiently to warrant a choice-of-law analysis. Chief among these differences—and sufficient to create a conflict—are the states' distinct views as to how unjustly a defendant must behave for liability to attach. In Massachusetts, unjust enrichment reaches even innocent defendants, i.e., those who have not behaved wrongfully. See Stevens v. Nagel, 831 N.E.2d 935, 939 (Mass. App. Ct. 2005). Although several states share this view, many do not. See Rapp, 302 F.R.D. at 514. Alabama and Minnesota, for instance, require "unconscionable conduct." Mantiply v. Mantiply, 951 So. 2d 638, 655 (Ala. 1989); see also Park-Lake Car Wash, Inc. v. Springer, 394 N.W.2d 505, 514 (Minn. Ct. App. 1896). A third type of jurisdiction, exemplified by Montana and Oregon, requires simply "some element of misconduct." Randolph V.

Peterson, Inc. v. J.R. Simplot Co., 778 P.2d 879, 883 (Mont. 1989); see also Tupper v. Roan, 243 P.3d 50, 59 (Or. 2010) (en banc). Distinctions among the states concerning the elements of unjust enrichment plainly constitute a conflict and force a choice-of-law analysis.

### 2. Choice-of-Law Analysis

Because the laws of express warranty, implied warranty, and unjust enrichment conflict among the states, the court must decide which law will govern the claims originating in each state. As noted earlier, Massachusetts looks to the Restatement (Second) of Conflict of Laws to resolve choice-of-law issues. Bushkin, 473 N.E.2d at 670 (Mass. 1985). The Restatement endorses a two-step analysis: the court must first determine, for each type of claim, the contacts between those claims and the relevant states before weighing those contacts in accordance with the comity, fairness, and efficiency factors embodied in Section 6.

The most relevant consideration for both warranty and unjust enrichment cases is the point of sale—i.e., each of the states—and the Section 6 policy considerations plainly suggest that the law of each class member's state should apply to the nationwide class claims.

#### i. Contacts Between the States and the Claims

In both warranty and unjust enrichment cases, the law of the state with the "most significant relationship" to the case controls. See Restatement (Second) of Conflict of Laws § 188(1) (warranty); see also id. § 221(1) (unjust enrichment).[6] When determining

---

[6] Courts apply Section 188 in warranty cases, see In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 18–19 (1st Cir. 2012), and Section 221 in unjust enrichment cases, see Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 404 (5th Cir. 2004).

10

the significance of a state's relationship to the case, the Restatement counsels assigning different weights to different types of contacts. In both warranty[7] and unjust enrichment[8] cases, the most relevant consideration is the place where the product was sold,[9] and the Restatement also counsels considering the domicil or place of business of the parties. For the nationwide class, the point of sale is each of the fifty states, in which class members reside. The several defendants are respectively headquartered in Massachusetts, Pennsylvania, California, and are incorporated either in Delaware or Pennsylvania.

---

[7]   Section 188(2), which governs warranty cases, reads, in full:

> (2) In the absence of an effective choice of law by the parties (see 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract,
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2). Plaintiffs did not purchase Test X180 under a contract, so (a) through (d) functionally collapse into a question: where did the transaction occur?

[8]   Section 221(2), which governs unjust enrichment cases, reads, in full:

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> (b) the place where the benefit or enrichment was received,
> (c) the place where the act conferring the benefit or enrichment was done,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Id. § 221(2).

[9]   See id. § 188 cmt. e ("When the contract deals with a specific physical thing . . . the location of the thing . . . is significant . . . ."); see also id. § 221 cmt. d ("[The place where the benefit or enrichment was received] will usually be that of greatest importance with respect to most issues in situations where the claim to restitution does not stem from any relationship between the parties.").

11

### ii.     Section 6 Considerations

Given that the principal contacts in both plaintiffs' MMWA and unjust enrichment claims are the sales of Test X180 in each of the fifty states and the District of Columbia, the Section 6 considerations[10] of comity, fairness, and efficiency unambiguously and overwhelmingly favor applying the law of each state to each claim.

The comity factors—"the needs of interstate and international systems," "the relevant policies of [Massachsuetts]," and "the relevant policies of other interested states," in this case all of them—suggest that the law of the state in which each putative class member purchased Test X180 should govern that class member's claim. To do otherwise would undermine the federal system by imposing the law of one state to claims arising under the law of another absent any meaningful contacts between those states. See Franchise Tax Bd. of Cal. v. Hyatt, 538 U.S. 488 (2003). Likewise, no state—neither Massachusetts nor any other—has a policy favoring either the extraterritorial application of its unjust enrichment or warranty laws, or the application of the law of another, to claims arising from within its own borders.

Application of a single state's law to the claim of a nationwide class would likewise upend the Section 6 fairness factors—"the protection of justified expectations" and "certainty, predictability, and uniformity of result." No putative class member nor any

---

[10]    These considerations are:

      (a) the needs of the interstate and international systems,
      (b) the relevant policies of the forum,
      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
      (d) the protection of justified expectations,
      (e) the basic policies underlying the particular field of law,
      (f) certainty, predictability and uniformity of result, and
      (g) ease in the determination and application of the law to be applied.

Id. § 6(2).

defendant could reasonably expect the warranty or unjust enrichment laws of one state to govern sales that took place in another. "[T]hat one state's law would apply to claims by consumers throughout the country . . . is a novelty . . . ." Bridgestone/Firestone, 288 F.3d at 1016. Federal courts have repeatedly found drastic distinctions between the warranty laws of the states. E.g., Cole v. General Motors Corp., 484 F.3d 717, 726 (5th Cir. 2007). Likewise, there is broad agreement among the federal courts that multistate classes pursuing unjust enrichment claims must do so under the laws of each state involved. See, e.g., Rapp, 302 F.R.D. at 513 ("As countless courts have found, the states' different approaches to, or elements of, unjust enrichment are significant.") (quotation omitted); In re Aqua Dots Prods. Liab. Litig., 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("As other members of this court have pointed out, the law of unjust enrichment varies too much from state to state . . . ."). "The court finds no basis on which to differ from the well-supported and detailed analyses of other district courts on this exact issue." Vulcan Golf, LLC v. Google, Inc., 254 F.R.D. 521, 533 (N.D. Ill. 2008) (endorsing the consensus view of nationwide unjust enrichment classes).

The consensus likewise determines Section 6's efficiency consideration: "ease in the determination and application of the law to be applied." While this "should not be overemphasized," Restatement (Second) of Conflict of Laws § 6 cmt. j, following the amply supported approach of the numerous federal courts to have determined these issues favors judicial economy.

Finally, Section 6's residual factor—"the basic policies underlying the particular field of law"—favor applying the warranty and unjust enrichment law of each state to transactions that occurred there. Warranty and unjust enrichment claims are both

consumer protection claims, and state consumer protection laws aim to protect in-state consumers, see Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 947 (6th Cir. 2011).

### 3. Predominance of Common Questions

Plaintiffs would seek certification of their class under Rule 23(b)(3), which permits certification only when "questions of law . . . common to the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The application of inharmonious warranty and unjust enrichment laws renders such predominance impossible.

#### i. MMWA and State Warranty Laws

There are tremendous differences among state warranty laws. As discussed above, certain states "require a strict showing of reliance," whereas others "have no reliance requirement," and some "have applied a rebuttable presumption of reliance" in express warranty cases. Cole, 484 F.3d at 726 (collecting cases). States also—again as discussed above—have conflicting views on privity in implied warranty cases: "a significant number of jurisdictions require vertical privity" whereas others have eliminated it. Id. at 728 (collecting cases).

A nationwide MMWA class pursuing an express warranty theory would thus lump together plaintiffs who—depending on their state—may or may not have to make individualized showings of knowledge and reliance. Defendants—depending on the state from which the claim arises—may or may not be able to rebut the presumption of reliance. A nationwide MMWA class pursuing an implied warranty theory would mix plaintiffs who—depending on their state—may or may not be able to assert claims against some or all defendants given the states' distinct privity requirements.

14

Determining which claims could go forward would require plaintiff-by-plaintiff inquiries for claims originating from privity jurisdictions. On both the express and implied warranty theories, claim-specific inquiries would dwarf any common questions that the plaintiffs' MMWA claim presents and would swamp this litigation to the point of unmanageability. Given this, it is no surprise that "[f]ederal courts have been reluctant to certify nationwide classes under the MMWA," Oscar, 274 F.R.D. at 509 (internal quotation omitted). This court shares that reluctance, and the nationwide class allegation in Count I is stricken.

### ii.    Unjust Enrichment

The unjust enrichment law of the states likewise varies significantly from state to state. First—as discussed more thoroughly above—the states differ as to what a defendant must do to incur liability. Compare Stevens, 831 N.E.2d at 939 (Massachusetts law requires no misconduct) with Mantiply, 951 So. 2d at 939 (Alabama law requires "unconscionable conduct"). States also differ as to whether a defendant may assert the equitable defense of unclean hands, and the states recognizing that defense differ as to its elements. See Clay v. Am. Tobacco Co., 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("[T]the claim of unjust enrichment is packed with individual issues and would be unmanageable."). In addition to these substantive distinctions, the states also have very different threshold rules for unjust enrichment claims: Delaware has a three-year statute of limitations, Minnesota a six-year statute of limitations, and Pennsylvania a four-year statute of limitations. See In re Actiq Sales & Mktg. Practices Litig., 307 F.R.D. 150, 164 (E.D. Penn. 2015) (surveying state cases). States further follow different rules to determine when an unjust enrichment claim begins to accrue, with some states starting from the transaction date and other states from the date on which

15

the plaintiff knew or should have known that the elements of the claim were present. See id. at 164–165 (surveying state cases).

Certification of a nationwide unjust enrichment class would aggregate plaintiffs who may or may not have a cause of action against defendants who may or may not be able to assert an equitable or a statute of limitations defense. These plaintiff-by-plaintiff issues massively overwhelm whatever issues the plaintiffs share, and it is for this reason that "federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment," Thompson v. Jiffy Lube Int'l, Inc., 250 F.R.D. 607, 626 (D. Kan. 2008). This court declines to flout this consensus, and the motion to strike the nationwide class allegation in Count IX is allowed.

### III.   Motions to Dismiss

Complaints must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, the court assumes the truth of all of a complaint's factual allegations, but not of its legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that fails to state a plausible claim upon which relief can be granted will be dismissed. Id.

#### A.   Count V (UCL), Count VI (FAL), and Count VII (CLRA)

Individually and on behalf of the California class, plaintiffs have asserted violations of three California consumer protection statutes: the UCL, the FAL, and the CLRA (collectively, "the California consumer protection statutes"). Plaintiffs cannot sustain these claims.

California law does not allow private plaintiffs to bring claims challenging unsubstantiated scientific claims, and instead requires them to show that challenged advertising is in fact false or misleading. See Nat'l Council Against Health Fraud v. King

Bio Pharm., Inc., 133 Cal. Rptr. 2d 207, 213–14 (Cal. Ct. App. 2003).[11] Complaints that reference the science underlying a product's advertising survive only if they allege "studies showing that a defendant's statement is false"—i.e., that science has demonstrated the falsity of a proposition. Id. at *8. Complaints predicated on "lack of scientific evidence or inconclusive, rather than contradictory, evidence"—i.e., that science has not satisfactorily demonstrated the truth of a proposition—do not state a claim under the California consumer protection statutes. Id.

Although plaintiffs claim to have alleged three studies proving the falsity of defendants' claims, those studies concern fenugreek extract, not Testofen. Although Testofen contains fenugreek, it, as a patented compound, is necessarily distinct from fenugreek. See Mayo Collaborative Servs. v. Prometheus Labs., Inc., — U.S. —, 132 S. Ct. 1289, 1293 (2012) ("[N]atural phenomena . . . are not patentable.") (internal quotation omitted). Given this distinction, plaintiffs may not use studies on fenugreek in general to impugn statements about Testofen in particular.

The bulk of plaintiffs' allegations under the California consumer protection statutes argue not that science has shown the falsity of defendants' statements, but that science does not sufficiently demonstrate their truth. Plaintiffs make several such assertions, e.g.: that defendants have relied on pilot studies instead of full-scale research projects to test Testofen (FAC ¶ 110), that Testofen researchers failed to distinguish between primary and secondary outcome measures (FAC ¶ 127), and that statistical analyses in the Testofen studies failed to guard against false positives (FAC

---

[11] This prohibition reaches each of the California consumer protection statutes. See, e.g., Bronson v. Johnson & Johnson, Inc., No. 12-cv-4184, 2013 WL 1629191 at * 9 (N.D. Cal. Apr. 16, 2013).

¶ 131). In their own words, plaintiffs argue that "the results cited by and relied upon by the Defendants . . . do not actually support" defendants' statements about Testofen and Test X180. (FAC ¶ 108). Questioning the validity and sufficiency research is the very definition of a substantiation claim, and Counts V,[12] VI, and VII therefore fail.

### B. Count I (MMWA), Count III (Express Warranty), Count IV (Implied Warranty), and Count IX (Unjust Enrichment)

Also individually and on behalf of the California class, plaintiffs have alleged violations of the state's express warranty, implied warranty, and unjust enrichment[13] laws. Plaintiffs likewise have asserted a violation of the MMWA on their own behalf. These claims also rely on the purported inadequacy of the science underlying Testofen, and will thus be dismissed.

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." Weinstat v. Dentsply Int'l, Inc., 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010) (internal quotations omitted). California law likewise "implies a warranty of

---

[12] Plaintiffs contend that they have stated an alternate theory of liability for this count: misbranding under federal and state drug laws. Both, however, collapse into their substantiation theory. Plaintiffs' federal misbranding theory is that defendants' labeling makes claims about Test X180's effects on the structure or function of the human body, and that that Test X180 is therefore a drug under clause (C) of 21 U.S.C. § 321(g)(1) (2012). That statute, however, explicitly exempts from its coverage any dietary supplement whose label contains substantiated structure/function claims. See id.; see also id. § 343(r)(6) ("[A] statement for a dietary supplement may be made if . . . the manufacturer of the dietary supplement has substantiation that such statement is truthful and not misleading.") (emphasis added). Test X180 is therefore misbranded only if defendants' structure/function claims lack substantiation, as the complaint contains no plausible allegations that Test X180 qualifies as a drug under any other clause of Section 321(g). This also undoes plaintiffs' state misbranding theory. The Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 et seq., treats compliance with the federal Food and Drug Act as compliance with its own parallel provisions unless the state standard "is higher." Cal. Health & Safety Code § 110280 (2016). Plaintiffs have not alleged—nor can the court discern—a state standard higher than the federal analogue.

[13] Plaintiffs allege unjust enrichment claims on behalf of both the nationwide and California classes. The court's disposition of the nationwide class claim has no bearing upon this discussion of the California class claim.

merchantability that goods '[a]re fit for [the] ordinary purposes for which such goods are used.'" Birdsong v. Apple, Inc., 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c). And although unjust enrichment "is not a standalone cause of action" under California law, an allegation of unjust enrichment sufficiently states a quasi-contract claim. Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). That claim requires plaintiffs to show "the receipt of a benefit and unjust retention of the benefit at the expense of another. . . . [I]t requires injustice." Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1069 (9th Cir. 2014).

Although California prohibits private parties from bringing substantiation claims as discussed above, plaintiffs attempt to smuggle them in under cover of the state's warranty and unjust enrichment laws. State law does not permit such end-runs. See, e.g., Aloudi v. Intramedic Research Grp., No. 15-cv-882, 2015 WL 4148381 at *6 (N.D. Cal. July 9, 2015) (dismissing, with leave to amend, warranty claims that relied on a substantiation theory); Aloudi v. Intramedic Research Grp., No. 15-cv-882, 2016 WL 1569981 at *5 (N.D. Cal. Apr. 19, 2015) (dismissing amended warranty claims with prejudice). To state their express warranty claim, plaintiffs rely on defendants' statements concerning the science of Testofen. Likewise, plaintiffs' implied warranty claim alleges that Test X180 was unfit for its purposes because Testofen lacked adequate scientific support. Finally, the purported injustice at the heart of the plaintiffs' unjust enrichment claim is the alleged failure of defendants' relied-upon science to substantiate their statements concerning Test X180 and Testofen. Plaintiffs' warranty and unjust enrichment claims interrogate the science supporting Testofen, and those

claims thus must be dismissed. Because plaintiffs' MMWA claim is predicated on their warranty claims, see Walsh, 807 F.2d at 1016, it too must be dismissed.

### C. Count VIII: Song-Beverly (CA) (All)

Plaintiffs have agreed to dismiss this count.

### IV. Conclusion

Defendants' Motion to Strike (Docket # 39) and Motions to Dismiss (Docket ## 34, 36) are ALLOWED. Judgment may be entered dismissing the complaint.

|  |  |
|---|---|
| May 16, 2016 | /c/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |